THE PEOPLE OF THE STATE OF NEW YORK ex rel. MEYER W. LIVINGSTON, Appellant, *v.* WILLIAM E. WYATT, as Justice of the Court of Special Sessions of the City of New York, Respondent.

1. WRIT OF PROHIBITION. Where on the return to an alternative writ of prohibition to restrain the further proceedings of a magistrate before whom an information is laid, the relator neither traverses the return nor moves for a new one, but moves for an absolute writ without a trial of the issues, the return is conclusive as to all matters denied by the respondent and as to any new matter alleged therein not denied by the relator, including the substance of the information.

2. CRIMES — VERIFICATION OF INFORMATION. An information will be regarded as verified, if returned as made " upon the information and belief of the affiant " that a crime has been committed by a person named.

3. INFORMATION — SUFFICIENCY OF — CODE CR. PRO. §§ 145, 148, 151, 194, 205, 608. An information sufficient to authorize a magistrate to issue a subpœna for the purpose of investigating whether a crime has been committed must be sworn to and cannot rest wholly on information and belief. Facts enough must be stated to show that the complainant is acting in good faith, and that he has reasonable grounds to believe that a crime has been committed by some person named or described. The law does not permit an inquiry based upon hearsay and the mere chance that some crime may be discovered, and a magistrate acts without jurisdiction upon an information of that character.

4. WHEN SUBPŒNA ISSUED BY MAGISTRATE TO DISCOVER COMMISSION OF A CRIME IS VOID. A subpœna served upon a person reciting that a magistrate has " reason to suppose an offense has been committed and for the purpose of investigating whether it has been committed " commands such person to appear before him "for that purpose" and which does not name or describe any person as defendant (Code Cr. Pro. § 612) is void upon its face and calls for obedience to its commands on the part of no one.

5. REMEDY OF PERSON SERVED WITH VOID SUBPŒNA IS BY WRIT OF HABEAS CORPUS NOT BY WRIT OF PROHIBITION. The remedy of a person served with a void subpœna is not by an application for a writ of prohibition to restrain the magistrate from further proceeding with the investigation; that writ is issued only in the exercise of a sound judicial discretion when there is no other remedy; he may properly refuse to obey the subpœna, and if any attempt is made to punish him he may have relief through the writ of habeas corpus, which, if denied him in the first instance, may be secured on appeal.

*People ex rel.* v. *Livingston* v. *Wyatt*, 113 App. Div. 111, affirmed.

(Argued June 12, 1906; decided November 20, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 29, 1906, which affirmed an order of Special Term denying a motion for an absolute, and vacating an alternative, writ of prohibition.

The relator alleged in his petition for the writ that on the 10th of December, 1905, a paper purporting to be a subpœna was served upon him, of which the following is a copy, viz. :

" STATE OF NEW YORK, *ss. :*

" In the Name of the People of the State of New York, to Meyer W. Livingston, No. 212 West 42nd Street.

" Having reason to suppose an offense has been committed and for the purpose of investigating whether it has been committed, you are commanded to appear before me, William E. Wyatt, a Justice of the Court of Special Sessions of the First Division of the City of New York, at the Building for Criminal Courts, Franklin and Center Streets, in said city on the 19th day of December, 1905, at three o'clock in the afternoon of that day as a witness for that purpose. And then and there to bring with you and produce all the books, papers and records in your possession or under your control of the firm of Klaw & Erlanger covering the period from January, 1896, down to the present time, including journals, day books, cash books, blotters, ledgers; also all checks drawn by said firm on any bank and returned to said firm; also all check books, stub books and bank pass books of said firm; all letters, copies of letters and letter press copy books of said firm; also the originals and copies of the theatrical agreement entered into in 1896 between Marc Klaw, Abraham L. Erlanger, Samuel F. Nirdlinger (sometimes known as Samuel F. Nixon), J. Fred Zimmerman, Charles Frohman and Al Hayman; also the original and copies of the theatrical agreement entered into on or about April 23, 1900, between the same persons; also the originals and all copies of any agreements entered into between the last named persons or any of them or by the firm of Klaw & Erlanger and each or any of

1906.]        People ex rel. Livingston v. Wyatt.        385

N. Y. Rep.]                Statement of case.

the following named persons, viz.: Moses Reis, Julius Cahan, Edward D. Stair, John A. Haviland, Stair & Haviland.

"And for a failure to attend or produce said books and papers you will be deemed guilty of criminal contempt and liable to a fine of $250 and imprisonment for thirty days."

The subpœna was duly signed by the magistrate over his official title.

The relator further alleged, in substance, that eighteen other persons whose names were given had been served with a similar paper; that the information was insufficient to confer jurisdiction upon the magistrate; that the relator was "unaware as to whether or not he" was himself a defendant or charged with a crime sought to be investigated; that the proceedings were conducted by the magistrate in secret; that counsel for the witnesses were excluded and that the proceedings were wholly in the interest of private parties and not to vindicate public justice.

The affidavit of Edward Bloom, read in support of the petition, stated that he was one of the witnesses upon whom a similar subpœna was served; that he obeyed the writ, was sworn by the magistrate and that his examination "was conducted by Deputy Assistant District Attorney Kresel, who was prompted with regard to many of the questions by Mr. Wickwire who, your deponent is informed and believes, is an attorney at law, connected with the office of Messrs. Guggenheimer, Untermeyer & Marshall, who have heretofore represented David Belasco in the various civil actions which have been pending between Messrs. Klaw & Erlanger and David Belasco; that nearly all of the questions asked by Deputy Assistant District Attorney Kresel were prompted by the said Wickwire, who in turn was consulting what deponent believes to have been a transcript of the proceedings in the civil actions aforesaid." (*Belasco Co.* v. *Klaw*, 48 Misc. Rep. 597.)

An alternative writ was issued to which the respondent made return that on the 18th of December, "one Isador J. Kresel, a Deputy Assistant District Attorney," laid before him as such

25

386    People ex rel. Livingston *v.* Wyatt.    [Nov.,

Points of counsel.      [Vol. 186.

magistrate " an information in writing charging, upon the information and belief of the affiant, that certain persons therein named had committed a certain definite and specified crime and praying that subpœnas might issue to require the attendance of other persons having knowledge in relation to the matter therein complained of ; that the said information does not charge the relator herein with any crime or offense ; that the contents of the said information and the names of the persons charged with offenses " were not set forth, because public policy, as well as the provisions of law, required that they should be kept secret " until the arrest of the defendant against whom a warrant" might be issued ; that for the same reason all persons were excluded from the examination " except the witness under examination, a stenographer, the informant and the counsel assisting him, one Arthur M. Wickwire ;" that " acting as a magistrate and having duly determined that the facts set forth in the said infor ‍ation constitute a crime and that the interests of public justice require that the matter should be inquired into and that the depositions of persons having knowledge of the said matters should be secured and the said informant having requested of me subpœnas for the witnesses whom he desired to examine in support of his information, I duly issued said subpœnas including among others a subpœna directed to the relator herein." The answer to the return set forth no fact and made no denial, but simply alleged certain legal conclusions.

The Special Term denied the application for an absolute writ and vacated the alternative writ. The Appellate Division affirmed unanimously as matter of law, and not in the exercise of discretion, and the relator appealed to this court.

*Edward Lauterbach* and *Alfred Lauterbach* for appellant. The magistrate's return having failed to show jurisdiction on his part to proceed, the absolute writ should have been granted. (*Matter of Travis*, 55 How. Pr. 347; *People* v. *Mallon*, 39 How. Pr. 454; *King* v. *Lovet*, 7 T. R. 152; *King* v. *Read*, 2 Doug. 485; *People* v. *Pillion*, 78 Hun, 74; *People* v.

*Dumar*, 106 N. Y. 502; *People ex rel. Sandman* v. *Tuthill*, 79 App. Div. 24; *People ex rel. Fleming* v. *Mayer*, 41 Misc. Rep. 289; *People ex rel. Burbank* v. *Woods*, 21 App. Div. 245.) The defendant having stated in his return that the alleged information on which he founded his investigation was based entirely upon the information and belief of the alleged informant, not only as to the identity of the alleged offenders, but also as to the very commission of the crime itself, the said alleged information was a nullity, and the magistrate was without jurisdiction to proceed. (*Matter of Peck* v. *Cargill*, 167 N. Y. 391; *Matter of Attorney-General*, 22 App. Div. 285; *Matter of McKelvey* v. *Marsh*, 63 App. Div. 396; *People ex rel. Sampson* v. *Dunning*, N. Y. L. J. May 12, 1906; *Matter of Leslie*, 19 Misc. Rep. 667; *Matter of Rothschild*, 11 Abb. [N. C.] 122; *Kuh* v. *Barnett*, 25 J. & S. 234; *Roome* v. *Webb*, 1 Code Rep. 114; 3 How. Pr. 327; *Rateau* v. *Bernard*, 12 How. Pr. 464; *People* v. *New York*, 32 Barb. 102; *Hecker* v. *New York*, 28 How. Pr. 211; *Bostwick* v. *Elton*, 25 How. Pr. 362; *Champlin* v. *New York*, 3 Paige, 573; *Walker* v. *Devereaux*, 4 Paige, 299.) There being no proof whatever that the alleged complaint before the magistrate was under oath, the absolute writ of prohibition should have been granted. (*People ex rel. Farley* v. *Crane*, 94 App. Div. 397; *Wilson* v. *Robinson*, 6 How. Pr. 112; *Vredenburgh* v. *Hendricks*, 17 Barb. 179; *Pratt* v. *Bogardus*, 49 Barb. 89.) The paper served upon relator and many other witnesses, purporting to be a subpœna, being in utter non-compliance with the forms of law as prescribed by the Code of Criminal Procedure, section 612, the defendant should be prohibited from proceeding to enforce the attendance of the relator and the other witnesses thereunder at the alleged investigation before him. (Code Cr. Pro. § 612.) The writ of prohibition is the proper remedy herein. (*People ex rel. Sandman* v. *Tuthill*, 79 App. Div. 24; *Quimbo Appo* v. *People*, 20 N. Y. 531; *People ex rel. Mayer* v. *Nichols*, 79 N. Y. 582; *People ex rel. Patrick* v. *Fitzgerald*, 73 App.

Div. 344; *People ex rel. Morse* v. *Nussbaum*, 55 App. Div. 245; *Collier* v. *Collier*, 1 Coke, 201; *Sweet* v. *Hulbert*, 51 Barb. 312; *Watts* v. *Conisby*, Hobart, 247a; 23 Am. & Eng. Ency. of Law [2d ed.], 223; 3 Black. Comm. 112; Wood on Mandamus, 106; 2 High's Ext. Leg. Rem. ch. 21, § 781; 2 Crary's N. Y. Pr. [5th ed.] 87; 2 Spelling on Injunctions [2d ed.], 1499.)

*William Travers Jerome, District Attorney* (*Robert C. Taylor* of counsel), for respondent. The magistrate had jurisdiction to conduct the examination. (2 R. S. [3d ed.] 793, §§ 2, 3; Code Cr. Pro. §§ 145, 148–150; *People* v. *Hicks*, 15 Barb. 153; *Blodgett* v. *Race*, 18 Hun, 132; *Wilson* v. *Robinson*, 6 How. Pr. 110; *State ex rel. Long* v. *Keyes*, 75 Wis. 288; *People* v. *Burns*, 2 Park. Cr. Rep. 34; *Matter of Boswell*, 34 How. Pr. 347; *Stewart* v. *Hawley*, 21 Wend. 561; *Payne* v. *Barnes*, 5 Barb. 465; *Sleight* v. *Ogle*, 4 E. D. Smith, 445; *Matter of Davies*, 168 N. Y. 89.) Prohibition will not lie where there is any other remedy. (*People ex rel. Hummel* v. *Trial Term*, 184 N. Y. 30; *People ex rel. Ballin* v. *Smith*, 184 N. Y. 96.)

VANN, J. The return states that a written information was laid before the magistrate charging, upon information and belief, that certain persons therein named had committed a definite and specific crime. The information itself was not made a part of the return because in the opinion of respondent public policy forbade, but it was expressly stated that the relator himself was not charged with any offense.

If the return was not full enough the relator should have moved for a further return instead of moving for an absolute writ upon the papers as they were. He neither traversed the return as made nor moved for a new one, but in effect demurred to the facts stated as insufficient to show jurisdiction in the magistrate to proceed with the investigation. Upon a motion for an absolute writ without a trial of the

issues, the return was conclusive as to all matters denied by the respondent and as to any new matter alleged therein not denied by the relator, including the substance of the information.

It is insisted that the information should have been sworn to in order to give the magistrate jurisdiction to take any action, but the return shows by fair implication that this was the fact, for it is alleged that the information in writing charged "upon the information and belief of the affiant" that a crime had been committed by a person named. An affiant is one who has made an affidavit, and an affidavit is a written statement sworn to before some officer authorizedy by law to administer oaths. (Law Dict., Black, 49; Anderson, 39; Bouvier, 111.)

It is further claimed that the information, even if sworn to, was insufficient because the allegations thereof were stated only upon information and belief, and that it does not appear that the sources of information or the grounds of belief were set forth.

Originally an information was a criminal proceeding at the suit of the king without a previous indictment or presentment by a grand jury. It could be preferred only by a responsible public officer when duly supported by affidavit, was limited to misdemeanors and was a substitute for an indictment. In this sense it is unknown to the law of this state. By the Revised Statutes it was called a complaint relating to a criminal offense. (3 R. S. 706.) By the Code of Criminal Procedure it is defined as "the allegation made to a magistrate, that a person has been guilty of some designated crime." (Code Cr. Pro. § 145.) The statute does not expressly provide that it is to be sworn to, nor even that it must be in writing, although the word "allegation" from the analogy of other judicial proceedings points to that formality. Some light is thrown upon the substance and office of the information by other sections, which we quote as follows:

"When an information is laid before a magistrate, of the commission of a crime, he must examine under oath the

informant or prosecutor, and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them." (§ 148.)

"The depositions must set forth the facts stated by the prosecutor and his witnesses, tending to establish the commission of the crime and the guilt of the defendant." (§ 149.)

"If the magistrate be satisfied therefrom, that the crime complained of has been committed and that there is reasonable ground to believe that the defendant has committed it, he must issue a warrant of arrest." (§ 150.)

The form for a warrant, as authorized by section 151, contains the following recital: "Information upon oath, having been this day laid before me that the crime of    has been committed and accusing," etc.

Section 194 provides that "At the examination (after the arrest of the accused) the magistrate must, in the first place, read to the defendant the depositions of the witnesses examined on the taking of the information," etc.

"The magistrate or his clerk must keep the depositions taken on the information or on the examination * * * and must not permit them to be inspected by any person, except," etc. (§ 205.)

"A magistrate before whom an information is laid, may issue subpœnas, subscribed by him, for witnesses within the state, either on behalf of the People or of the defendant." (§ 608.)

There is some confusion in the authorities as to what an information really is, for the term is frequently used to designate the deposition or affidavit upon which a criminal warrant is issued. The statute itself is not free from doubt upon the subject. An affidavit taken before a magistrate may be full enough to perform the function both of an information and a deposition. This is true when it sets forth facts sufficient to authorize a warrant without further evidence, but when more proof is required and it is necessary to subpœna witnesses and take their depositions, an information is essential.

Its office is that of a complaint, as the Revised Statutes called it.    Depositions are the authority for the warrant, as the magistrate must be satisfied "therefrom," which refers to the depositions only.    Something less is required in an information than in a deposition, as otherwise there would be no occasion for the latter.    The deposition must set forth facts tending to show that a crime has been committed and that there is reasonable ground to believe that the defendant committed it.    While the information need not go so far as the deposition, still it cannot rest wholly on information and belief, but facts enough must be stated to show that the complainant is acting in good faith and that he has reasonable grounds to believe that a crime has been committed by some person named or described.

From all the analogies of the law, both civil and criminal, the information is intended to be made upon oath.    While the statute does not expressly require it, we think it is necessarily implied, for otherwise an unfounded accusation could be set on foot and an investigation instituted upon unsupported assertion without any proof whatever.    Business secrets could be exposed and private papers invaded through the worst of motives.    Malice, civil actions, business rivalry, speculation or curiosity might be the sole foundation for a useless and oppressive proceeding.    Neither the great lawyers who drafted the Code of Criminal Procedure, nor the legislature which enacted it into law, intended that a criminal investigation should be made by a magistrate without evidence given under the sanction of an oath and subject to the penalty for perjury if willfully false.    The rule as to grand juries has always been different in this country for they are clothed by the common law with inquisitorial powers and, of their own motion, may make full investigation to see whether a crime has been committed, and if so, who committed it. They may investigate on their own knowledge, or upon information of any kind derived from any source deemed reliable; may swear witnesses generally and may originate charges against those believed to have violated the criminal

laws. (Code Cr. Pro. § 259; *Hale* v. *Henkel*, 201 U. S. 43; Wharton's Criminal Pleading and Practice [8th ed.], § 337; Thompson & Merriam on Juries, §§ 614, 617.)

The danger of prosecuting before a magistrate without any legal proof is apparent when the subpœna in question is read, as it calls for all journals, day books, order books, blotters, ledgers, checks, check books, stub books, bank passbooks, letters, copies of letters, etc., covering a period of nine years. In addition, it calls for various contracts made by parties shown to be interested in pending litigation with a party whose counsel was also counsel for the complainant. No business secret would remain unknown if such a command were obeyed. The subpœna was suggestive of private ends and furtive aims. A prudent magistrate should proceed with the utmost caution when he has reason to suspect that a criminal proceeding was commenced before him, not to vindicate public justice, but to serve some private purpose, and should withhold process until satisfied that the complainant is acting in good faith in behalf of the People and not to aid personal objects.

We have already pointed out the nature of the proof required in an information. Suspicion is not enough, and information and belief are not enough, unless facts are stated showing the source of the information and the grounds of belief. The information should fairly warrant the inference by the magistrate that in good faith and on reasonable grounds the complainant believes that a definite crime has been committed by a designated person. There is then a proper foundation upon which to issue subpœnas and take depositions; whereas without it the inquiry is prosecuted on the mere chance that some crime may be discovered. The statute does not permit simple hearsay to become the sole basis of such a proceeding. The highest care of the law is personal liberty, and construing the statute in the light of that principle, we think that the respondent was without jurisdiction to entertain the proceeding or to require the attendance of witnesses, because sufficient proof was not laid before him.

Even upon the assumption that the magistrate had acquired jurisdiction to investigate, the subpœna served upon the relator showed upon its face that it was issued for a purpose not authorized by law and that it did not name or describe any person as defendant, as required by law. (Code Cr. Pro. § 612.) The magistrate recited in the subpœna that he had " reason to suppose an offense has been committed and for the purpose of investigating whether it has been committed," and then commanded the relator to attend before him " for that purpose." Thus it appeared that sufficient proof had not been made tending to show that an offense had been committed and that the subpœna was issued solely to see whether one had been committed or not. It did not state what the crime was, nor who the accused was, but indicated an intention to rove around and find out. The recital by the magistrate of a mere supposition followed by a declaration of his purpose to investigate to see whether the supposition was correct, indicates a voyage of discovery that the law does not tolerate.

We are of the opinion that the subpœna issued by the magistrate was void upon its face and that it called for obedience to its commands on the part of no one. We are also of the opinion, however, that while there is strong reason for believing that in this case criminal process has been used for improper purposes, still, that prohibition is not the proper remedy.

The writ of prohibition is not favored by the courts. Necessity alone justifies it. Although authorized by statute, it is not issued as a matter of right, but only in the exercise of sound judicial discretion when there is no other remedy. While it issues out of a superior court and runs to an inferior court or judge, its object is not the correction of errors nor relief from action already taken. In no sense is it a substitute for an appeal, as its sole province is to prevent the inferior tribunal from usurping a jurisdiction which it does not possess, although it runs against the exercise of unauthorized power in a proceeding of which the lower court has jurisdiction, as well as when the proceeding itself is instituted without jurisdiction. The sole question to be tried is the power of

the inferior court or magistrate to do the particular act in question. It is in effect an injunction against a court as contrasted with an injunction proper, which is granted against persons or corporations. It is not an affirmative remedy like mandamus, but purely negative, for it does not command that anything be done, but that something should be left undone. The practice in issuing and enforcing the writ is regulated by statute, but its nature, object and function, as well as the facts governing the issue thereof, are regulated by the common law. (Code Civ. Pro. §§ 2091, 2102.) It is justified only by "extreme necessity" when the grievance cannot "be redressed by ordinary proceedings at law, or in equity, or by appeal." (*People ex rel. Adams* v. *Westbrook*, 89 N. Y. 152, 155; *People ex rel. Hummel* v. *Trial Term*, 184 N. Y. 30; *Thomson* v. *Tracy*, 60 N. Y. 31; *Appo* v. *People*, 20 N. Y. 531; *Ex parte Braudlacht*, 2 Hill, 367; *People ex rel. Onderdonk* v. *Supervisors of Queens Co.*, 1 Hill, 195; Fiero's Special Proc. 278; High's Extraordinary Remedies, §§ 762, 772; Code Civ. Pro. §§ 2091, 2102; 2 R. S. 587.)

We think the relator had a remedy which, even if indirect and inconvenient, deprived him of the right to a writ of prohibition. We do not hold that a motion before the magistrate to set aside the subpœna would be an adequate remedy, because we cannot find any right of appeal allowed to a witness from an order denying such an application. There was a remedy, however, thorough and complete, through the writ of habeas corpus. The magistrate was not only acting without jurisdiction, but the subpœna was void on its face and the relator was not bound to obey it. It was of no more effect than a blank piece of paper. He could lawfully decline to attend, or to be sworn, or to answer any question. Any attempt to punish him would have been unlawful and he would have had an absolute right to relief through this great historical writ, which is the most important process known to the law. If relief were refused in the first instance, there was a right of appeal to the Appellate Division and to the Court of Appeals, so that ultimate if not immediate justice

1906.]  People ex rel. Livingston *v.* Wyatt.  395

N. Y. Rep.]                    Opinion per Chase, J.

was certain. The writ is intended to afford prompt relief from unlawful imprisonment of any kind and under all circumstances. It reaches the facts affecting jurisdiction or want of power by the most direct method and at once releases the applicant from restraint when it is shown to be unauthorized.

This remedy was open to the relator and his application for a writ of prohibition was properly denied, because that form of relief can be resorted to only when there is no other.

The order appealed from should be affirmed, without costs.

Chase, J. I concur in the opinion of the court except that I am of the opinion that it is intended by section 145 of the Criminal Code to make a distinction in the certainty with which crime and the person committing the crime is described. The information must contain an allegation that *a person* has been guilty of a crime and an allegation that some *designated crime* has been committed. The omission in the said section of the Code of the word "designated" in referring to the person is intentional. Criminal-law officers frequently have indisputable evidence that a crime has been committed, but are wholly unable to designate a person as the one who committed the crime. Every person having knowledge of facts tending to designate the person who has committed the crime may wholly refrain from stating their knowledge to others.

In many counties of the state grand juries meet at very infrequent intervals, and when evidence that a crime has been committed is clear, but the person committing the crime cannot be ascertained without taking the depositions of witnesses, the delay in waiting for a grand jury to meet may result in a failure of justice. It should not necessarily be fatal to an information if it does not name or designate the person who committed the crime. I prefer to hold that an information alleging that a designated crime has been committed by a person is sufficient to require the taking of depositions if it in good faith shows that the person who committed the crime cannot be definitely named or described.

EDWARD T. BARTLETT, J. (dissenting).    I agree with the prevailing opinion that the respondent was without jurisdiction to entertain this proceeding, or to require the attendance of witnesses; also with the suggested form of the information, and that it should be made under oath; also that the language of the subpœna is suggestive of "private ends and furtive aims."

This proceeding sought to lay bare the business secrets of relator and eighteen other witnesses, extending over a period of about nine years, which was on its face a flagrant abuse of criminal process based upon a void information.

On this record the learned Appellate Division should have dismissed the proceeding as void and declared the subpœnas issued therein waste paper, or issued the writ of prohibition.

As we have before us a concededly void proceeding, the appeal should be dismissed. We have no jurisdiction to determine, as we are about to do in express terms, that the writ of prohibition was properly denied by the Appellate Division. If that question was before us I should dissent from the decision about to be made in that regard.

I also dissent from the decision, which assumes jurisdiction in the court below, to the effect that habeas corpus is an adequate remedy to protect the witnesses in this case. They ought not to be required to place themselves in contempt of court, thereby incurring the peril of fine and imprisonment. Why should witnesses thus pursued and harrassed in a void proceeding be compelled to defend themselves in the courts?

The question of jurisdiction is always open, and may be raised at any stage of the proceedings.

I vote for the dismissal of this proceeding as void.

VANN and CHASE, JJ., read for affirmance; CULLEN, Ch. J., GRAY and WERNER, JJ., concur with VANN, J.; WILLARD BARTLETT, J., dissents on the ground that habeas corpus is not an adequate remedy. In other respects he concurs with VANN, J.    EDWARD T. BARTLETT, J., also dissents in memorandum.

Order affirmed.